# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| ENITAN AYODEJI LIJADU<br>A 262 27 080<br>VS. | CIVIL ACTION NO. 06-0518<br><br>SECTION P |
| IMMIGRATION AND NATURALIZATION<br>SERVICE, ET AL. | JUDGE JAMES<br>MAGISTRATE JUDGE HAYES |

## MEMORANDUM ORDER

Before the court is a civil rights complaint[1] filed *in forma pauperis* on March 27, 2006, by *pro se* plaintiff Enitan Ayodeji Lijadu. Plaintiff is an immigration detainee in the custody of the Department of Homeland Security's Bureau of Immigration and Customs Enforcement (ICE). He is detained at the Tensas Parish Detention Center (TPDC), Waterproof, Louisiana, and he complains of inadequate and delayed medical treatment. He names ICE District Director John Mata, ICE Deportation Officer Agent Palamante, TPDC Warden Dale Dauzat, and TPDC Medical Administrator Pam Poole as his defendants. He seeks injunctive relief and compensatory damages. In a motion filed on May 12, 2006 [doc. 4], plaintiff requested access to his medical records at TPDC.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

## STATEMENT OF THE CASE

---

[1] The complaint arises under 42 U.S.C. §1983 insofar as it alleges constitutional violations by "state actors." It also arises under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) insofar as it alleges constitutional violations by federal employees or agencies.

1

Plaintiff is an immigration detainee awaiting removal. He was taken into custody by ICE on August 17, 2004. On December 5, 2004 he was transferred to TPDC. Upon his arrival, he advised the TPDC medical staff of certain pre-existing medical conditions – he has been diagnosed with ulcerative colitis[2] and has been determined to be infected with HIV.[3] He advised the staff that he is in need of continued and periodic monitoring of these conditions since the colitis can deteriorate into colon cancer and HIV can deteriorate into AIDS.

On March 21, 2005, he filed an administrative grievance with TPDC complaining that he had not yet been scheduled for a clinical examination. On April 28, 2005, he informed TPDC medical administrator Pam Poole of the need for a clinical examination; Poole advised plaintiff that such a request must first be approved by ICE. On May 13, 2005, Poole advised plaintiff that his request for a clinical examination had been submitted to ICE but denied. Poole advised plaintiff to resubmit his request.

On May 16, 2005, plaintiff advised the TPDC nurse practitioner that his dentures were broken and that he was experiencing difficulties eating. The nurse practitioner ordered a dental

---

[2] Ulcerative colitis is a chronic, episodic, inflammatory disease of the large intestine and rectum characterized by bloody diarrhea. The cause is of ulcerative colitis is unknown. It may affect any age group, although there are peaks at ages 15 to 30 and then again at ages 50 to 70. The disease usually begins in the rectal area and may eventually extend through the entire large intestine. Repeated episodes of inflammation lead to thickening of the wall of the intestine and rectum with scar tissue. Death of colon tissue or sepsis may occur with severe disease. The symptoms vary in severity and their onset may be gradual or sudden. Attacks may be provoked by many factors, including respiratory infections or stress. Risk factors include a family history of ulcerative colitis or Jewish ancestry. The incidence is 10 to 15 out of 100,000 people. See Medline Plus, Medical Encyclopedia, A Service of the United States National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/medlineplus/ency/article/000250.htm

[3] HIV infection is a viral infection caused by the human immunodeficiency virus (HIV) that gradually destroys the immune system, resulting in infections that are hard for the body to fight. *id.*, at http://www.nlm.nih.gov/medlineplus/ency/article/000602.htm

clinic appointment. On May 23, 2005, plaintiff was advised that his request for a dental appointment was denied by ICE because plaintiff had not yet been in ICE custody for the requisite ten month period required by ICE regulations. Plaintiff, however, had been in ICE custody for a period well in excess of ten months.

On May 27, 2005, plaintiff complained to TPDC staff physician, Dr. Lee, about ICE's refusal to allow him to have clinical appointments. Dr. Lee agreed to resubmit plaintiff's requests. On June 10, 2005, Lee advised plaintiff that she had not yet received a response from ICE. On July 1, 2005, Nurse Taylor advised plaintiff that ICE had approved his request for a gastro-intestinal clinic appointment. On July 13, 2005, plaintiff was advised that "...due to negligence or oversight on the part of the [TPDC] medical staff..." the clinic appointment had not been scheduled.

On August 1, 2005, plaintiff's prescription for Asacol,[4] the medication prescribed to treat his colon condition, expired and was not reordered by the TPDC pharmacy. On August 12, 2005, plaintiff complained to Dr. Lee that his medication had not been reordered and that as a result he was suffering from painful and irregular bowel movements, blood in his stool, and fatigue. On August 19, 2005, plaintiff filed an administrative grievance concerning the medication. On the same date, Dr. Lee prescribed a Sulfasalazine, as a generic substitute for the Asacol.[5]

---

[4] Asacol® or mesalamine, is an anti-inflammatory medicine, used to treat ulcerative colitis, a condition in which the bowel is inflamed. Mesalamine reduces bowel inflammation, diarrhea (stool frequency), rectal bleeding, and stomach pain. See Medline Plus, Medical Encyclopedia, A Service of the United States National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/medlineplus/druginformation.html

[5] Sulfasalazine is used to treat bowel inflammation, diarrhea (stool frequency), rectal bleeding, and abdominal pain in patients with ulcerative colitis, a condition in which the bowel is inflamed.. Sulfasalazine is in a class of medications called anti-inflammatory drugs. It works by reducing inflammation (swelling) inside the body. *id.*

On August 30, 2005, Pam Poole advised plaintiff that ICE would no longer pay for plaintiff's prescription medication. She advised plaintiff to submit a written complaint to his deportation officer and ICE. She then referred plaintiff for further examination by a physician.

On September 2, 2005, plaintiff complained to Dr. Lee about side-effects from Sulfasalazine and requested that he be provided Asacol. Dr. Lee agreed and promised to re-order the original medication. However, plaintiff claims that he did not receive the medicine as promised.

On the same date, plaintiff fractured his wrist when he slipped and fell in a puddle of water in the dormitory's bathroom. Plaintiff complained of pain to Ms. Poole who provided medication to relieve pain and reduce swelling. On September 5, 2005, plaintiff requested emergency sick call because of his wrist. Plaintiff advised the nurse practitioner that he had slipped in the bathroom and injured his wrist. He was sent to the Riverland Hospital where an x-ray examination revealed that his wrist was fractured. Plaintiff's wrist was placed in a temporary splint. On October 27, 2005, an orthopedic cast was applied. Plaintiff claims that this delay resulted in delaying the healing process and a permanent deformity to his wrist.

On November 18, 2005, plaintiff appealed the medical administrator's response to his August 19 grievance. On November 19, 2005, plaintiff reviewed his medical records and discovered "false statements / misrepresentations about the cause of the injury to his wrist." On December 7, 2005, he filed a grievance about these discrepancies. On December 8 he received a response from the Warden informing plaintiff that the Warden could not interfere or intervene with decisions regarding health care services. Plaintiff was advised to contact his deportation

officer.[6] On December 14, 2005, plaintiff appealed this decision to his deportation officer and requested assistance in obtaining proper treatment and medications. He did not receive a response. On January 27, 2006, plaintiff appealed to the ICE District Director, John Mata. He did not receive a response from Mata. On January 30, 2006, plaintiff received a response to his December 7, 2005, grievance. He was advised that the statements in his medical records concerning his injury could not be changed. However, he was advised to write his own version of the events and that this note would be placed in his medical file.

On March 8, 2006, plaintiff signed his federal civil rights complaint; it was received and filed on March 27, 2006. On May 12, 2006, plaintiff filed a Motion seeking unrestricted access to his medical records to support his claims and contentions in this complaint. [doc. 4]

## LAW AND ANALYSIS

1. Rule 8 Considerations

Rule 8 of the Federal Rules of Civil Procedure does not require explicit detail, but it does require a plaintiff to allege **specific facts which support the conclusion that his constitutional rights were violated by each person who is named as defendant.** This conclusion must be supported by specific factual allegations stating the following:

(1) **the name(s) of each person** who allegedly violated plaintiff's constitutional rights;

(2) **a description of what actually occurred or what <u>each</u> defendant did to violate plaintiff's rights;**

---

[6] The warden's response noted, "It would seem that your medical concerns voiced in your complaint is a matter to discuss with your deportation officer to be remedied. This facility has forwarded information on your condition to the Public Health Service for authorization and they denied the services. This denial is not something that I can change as a supervisor of this facility. You may file an appeal to ICE regarding PHS's denial of treatments or medication." See doc. 1-1, Exhibit C, p. 23

5

(3) **the place and date(s) that <u>each</u> event occurred; and**

(4) **a description of the alleged <u>injury</u>** sustained as a result of the alleged violation.

Plaintiff should amend his complaint to provide the information required by Rule 8.

## 2. Medical Care Claims

To the extent that plaintiff complains of delayed or inadequate medical care, his present pleadings fail to set forth a cause of action. The standard to apply in analyzing a denial of medical care claim asserted by a detainee depends upon whether the claim is directed to a "condition of confinement" or to an "episodic act or omission." *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997), quoting *Hare v. City of Corinth,* 74 F.3d 633, 644 (5th Cir. 1996). Under the "episodic act" standard, "a state official's episodic act or omission violates a pretrial detainee's due process right to medical care if the official acts with subjective deliberate indifference to the detainee's rights." Thus, the plaintiff must show that he suffered a sufficiently serious deprivation and deliberate indifference by prison officials. *Hare*, 74 F.3d at 643 and 650.

This is the same standard applicable to convicted prisoners, whose claims are analyzed under the Eighth Amendment. In order to prevail on such claims, convicts must establish that the delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Plaintiff should amend his petition to allege facts sufficient to establish "deliberate indifference" on the part of each of the defendants.

### 3. Supervisory Defendants and Defendants in Their Official Capacity

Plaintiff is also hereby advised: "Supervisory officials may be held liable only if: (i) they

6

affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983). In other words, to the extent that plaintiff seeks to name supervisory officials as defendants, he must amend his complaint to allege facts sufficient to demonstrate either personal involvement or the implementation of unconstitutional policies by those defendants.

### 4. Medical Records

Finally, plaintiff seeks a court order granting him access to his medical records. The <u>INS Detention Standard, Medical Care</u>, Part III Standards and Procedure, Subpart M Confidentiality and Release of Medical Records, provides in part:

> Copies of health records may be released by the facility health care provider directly to a detainee, or any person designated by the detainee, upon receipt by the facility health care provider of a written authorization from the detainee. (Form I-813 may be used for this purpose) ...
>
> Detainees who indicate that they wish to obtain copies of their medical records will be provided with the appropriate form. The INS will provide the detainee with basic assistance in making the written request (if needed) and will assist in transmitting the request to the facility health care provider.[7]

---

[7] See http://www.ice.gov/doclib/partners/dro/opsmanual/medical.pdf

The Plaintiff should avail himself of this process to obtain a complete copy of the medical records at TPDC. Thereafter, plaintiff should amend his complaint and provide a copy of his complete medical records to the court. Therefore, the motion for unrestricted access to medical records is **DENIED** at this time. Should the plaintiff have difficulty obtaining copies of his medical records after making a proper request, he should re-urge his motion at that time.

Finally, before this court determines the proper disposition of plaintiff's claims, plaintiff should be given the opportunity to remedy the deficiencies of his complaint. *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Accordingly;

**THE CLERK IS DIRECTED** to serve the plaintiff with a copy of this Order.

**IT IS ORDERED** that plaintiff amend his complaint within thirty (30) days of the filing of this order to cure the deficiencies as outlined above, and alternatively, dismiss those claims plaintiff is unable to cure through amendment. Specifically, but not exclusively, plaintiff shall precisely state what each named defendant did to violate plaintiff's constitutional rights with respect to each separate incident alleged; and,

**IT IS FURTHER ORDERED** that plaintiff's "Motion to Request ... Unrestricted Access to ... Medical Record File..." [doc. 4] is **DENIED;** and,

**IT IS FURTHER ORDERED** that plaintiff avail himself of the procedures set forth in the <u>INS Detention Standard, Medical Care</u>, Part III Standards and Procedure, Subpart M Confidentiality and Release of Medical Records to obtain copies of his medical file; and, thereafter,

**IT IS FURTHER ORDERED** that plaintiff provide a complete copy of his medical records to the court to assist in the resolution of this matter. Should the plaintiff have difficulty

8

obtaining copies of his medical records after making a proper request, he should re-urge his motion at that time.

**Failure to comply with this order may result in dismissal of this action as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i) or under Rule 41(b) or 16(f) of the Federal Rules of Civil Procedure. Plaintiff is further required to notify the Court of any change in his address under U.L.R. 41.3W.**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 16th day of May, 2006.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE