UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **ENITAN AYODEJI LIJADU** | * | **CIVIL ACTION NO. 06-0518**<br>Section P |
| **VERSUS** | * | **JUDGE JAMES** |
| **IMMIGRATION AND NATURALIZATION SERVICE, ET AL.** | * | **MAGISTRATE JUDGE HAYES** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are cross-motions for summary judgment filed by defendant, Dale Dauzat, [doc. # 25], and *pro se* plaintiff, Enitan Ayodeji Lijadu [doc. # 30].  For reasons assigned below, it is recommended that Dauzat's motion for summary judgment be **GRANTED**, and that plaintiff's motion for summary judgment be **DENIED**.

### Procedural History

On August 17, 2004, Enitan Lijadu was taken into custody by Immigration & Customs Enforcement ("ICE").  On December 5, 2004, he was transferred to the Tensas Parish Detention Center ("TPDC") in Waterproof, Louisiana where he remained as an immigration detainee until shortly before his removal from the United States on December 12, 2006.

On March 27, 2006, Lijadu filed the above-captioned civil rights complaint.[1]  Made

---

[1] The complaint arises under 42 U.S.C. § 1983 insofar as it alleges constitutional violations by "state actors."  It also arises under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999 (1971) insofar as it alleges constitutional violations by federal employees.

1

defendants were ICE District Director, John Mata; ICE Deportation Officer, Agent Palamante; TPDC Warden, Dale Dauzat; and TPDC Medical Administrator, Pam Poole.[2] Lijadu seeks injunctive relief and compensatory damages due to inadequate medical care and an unsafe condition at TPDC which caused him to slip and fall and break his wrist.

On July 18, 2006, the court directed service upon the defendants. However, only Dale Dauzat was properly served.[3] On September 11, 2006, Dauzat filed the instant motion for summary judgment seeking dismissal of plaintiff's claims against him. On October 19, 2006, plaintiff filed his own motion for summary judgment seeking imposition of liability against all defendants.[4] Following a delay for briefing, the matter is now before the court.

## Summary Judgment Principles

Summary judgment is proper if the movant demonstrates that "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; *Lechuga v. Southern Pacific Transp. Co.*, 949 F.2d 790 (5th Cir. 1992). "In order to defeat a properly supported motion for summary judgment, the nonmoving party must direct the court's attention to admissible evidence in the record which

---

[2] The now defunct Immigration and Naturalization Service was identified as a defendant in the caption of the complaint. However, no allegations were levied against the former government agency in the body of the complaint, as amended. This issue will be raised by separate order.

[3] Service could not be perfected upon the remaining defendants. This issue will be addressed by separate order.

[4] Our consideration of plaintiff's motion is limited to Dauzat's alleged liability. The motion is premature as to the unserved defendants.

demonstrates that it can satisfy a 'fair-minded jury' that it is entitled to a verdict in its favor."[5] *ContiCommodity Services, Inc. v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995)(citing, *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257 (5th Cir. 1991)).

In response to a properly supported motion for summary judgment, the non-movant, may not rest upon the mere allegations or denials contained in his pleadings, but instead must set forth, by affidavit or otherwise, the specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). In other words, once the moving party points to an absence of evidence in the nonmoving party's case, the nonmovant must come forward with summary judgment evidence sufficient, such that if introduced at trial, it would suffice to prevent a directed verdict against the nonmovant. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

## **Background**[6]

Upon his arrival at TPDC, Lijadu advised the medical staff of his preexisting medical conditions notably consisting of ulcerative colitis and HIV. He told the staff that his conditions required continued and periodic monitoring to avoid deterioration. Despite repeated entreaties, Lijadu contends that TPDC unreasonably delayed treatment and monitoring of his medical conditions. Specifically, Lijadu alleges that for over eight months he did not receive his ulcerative colitis medication (Asacol). As a result, he suffered diarrhea, weight loss, vomiting,

---

[5] In this non-jury case, the trier of fact is the court.

[6] A detailed chronology of Lijadu's allegations is set forth in the court's previous orders. (*See*, May 16 and July 18, 2006 Memorandum Orders). Accordingly, only the facts and allegations germane to the instant motions are discussed here.

and fatigue.[7] Plaintiff further alleges that in May 2005, he complained about broken dentures and associated eating difficulty. Yet, as of March 2006, his broken dentures had not been fixed or replaced.[8]

On September 5, 2005, Lijadu injured his wrist after slipping and falling in a puddle of water in the bathroom.[9] Two days after the accident, his wrist was still swollen, and he was taken to the hospital where x-rays confirmed a fracture. His wrist was placed in a splint, and he was instructed to see an orthopedist within two to three days. However, the medical records indicate that he was not seen by an orthopedist until almost six weeks later on October 20, 2005. Lijadu claims that the delay in being seen by an orthopedist slowed the healing process, and may account for permanent deformity to his wrist and persistent numbing pain.

### Analysis

As an initial matter, the court observes that because Lijadu is no longer in custody, his claim for injunctive relief is moot. *See, Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988)(citations omitted). Accordingly, the focus of this ruling is Lijadu's claim for compensatory damages against Warden Dale Dauzat.

Plaintiff is a immigration detainee. The constitutional rights of immigration detainees

---

[7] In July 2006 when Lijadu's supply of Asacol again ran out, almost one month elapsed before his medication was resumed.

[8] Indeed, since suit was filed, he has suffered further deterioration of his teeth.

[9] Nurse's notes indicate that Lijadu injured his wrist while playing basketball. Lijadu contested this entry in his medical record, and strongly maintains that his injury stems from a slip and fall in the bathroom. For purposes of this motion, the court resolves this disputed fact in favor of the non-movant. *See, Topalian v. Ehrman*, 954 F.2d 1125, 1138 n33 (5th Cir. 1992)(citation omitted)(factual disputes that are irrelevant do not preclude summary judgment).

and pretrial detainees are analyzed alike. *See, Brown v. Ridge*, 2006 WL 1581167 (W.D. La. 1/19/06 ) and *Ortega v. Rowe*, 796 F.2d 765, 767 (5th Cir. 1986). A pretrial detainee's constitutional right to medical care (as enforced against a state actor) is based upon the due process guarantee of the Fourteenth Amendment. *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000). When a pretrial detainee brings a claim for the denial of medical care which is directed toward a particular incident, it is properly analyzed as an episodic act case, and a deliberate indifference standard is applied. *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997), quoting *Hare v. City of Corinth,* 74 F.3d 633, 644 (5th Cir.1996); *Nerren v. Livingston Police Dept.,* 86 F. 3d 469 (5th Cir. 1996).[10] This is the same standard applicable to convicted prisoners whose claims are analyzed under the Eighth Amendment. "[T]here is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir.2001).

Thus, to establish liability, a detainee must "show that a state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted." *Wagner v. Bay City, Tex.*, 227 F.3d 316, 324 (5th Cir. 2000); *see also Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285 (1976). More specifically, deliberate indifference in the context of an episodic failure to provide reasonable medical care to a pretrial detainee means that: (1) the official was aware of facts from which an inference of substantial risk of serious harm could be

---

[10] The court observes that plaintiff's claim against Dale Dauzat alleging an unreasonably dangerous condition in the bathroom is arguably classified as a challenge to his "condition of confinement." *See, Lee v. Hennigan*, 98 Fed. Appx. 286, 2004 WL 816724 (5th Cir. 2004)(unsafe shower facilities analyzed as condition of confinement claim). However, the reasonable-relationship test applied in conditions cases is "functionally equivalent to" the deliberate indifference standard employed in episodic cases. *Scott*, 114 F.3d at 54 (citation omitted).

drawn; (2) the official actually drew that inference; and (3) the official's response indicates that the official subjectively intended that harm occur. *Thompson v. Upshur County, Tx.,* 245 F.3d 447, 458-59 (5th Cir. 2001). "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

Prisoners are not entitled to the "best medical care money can buy." *See*, *Mayweather v. Foti,* 958 F.2d 91 (5th Cir. 1992); *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981). In *Woodall,* the Fifth Circuit stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability. *Woodall, supra.* The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act.

As stated above, to prevail on his medical claims plaintiff must show that defendant, Dale Dauzat was "deliberately indifferent" to his serious medical needs. Plaintiff contends that Dauzat was cognizant of his plight via the grievances that plaintiff submitted to him. In contrast, Dauzat has adduced an affidavit wherein he averred that he only becomes personally aware of an inmate's grievance(s) once the grievance reaches the third step of the grievance process. (Dauzat Affidavit; Def. Exh. B). However, because Lijadu did not file a third step grievance, Dauzat

6

stated that he was not aware of Lijadu's grievances. *Id*. Accordingly, Dauzat could not have subjectively intended to harm Lijadu.

Plaintiff does not adduce any other evidence that Dauzat was personally aware of his inadequate medical care or of the unsafe bathroom floor. He also does not contest that he did not file a third step grievance. Instead, Lijadu alleges that he did not know about the third step of the grievance process because he was not provided a copy of the rules governing the grievance process. However, at the bottom of the second step response form the inmate is notified that if he is not satisfied with the response, he can proceed to the third step by completing and forwarding appropriate forms to the "unit head." (*See e.g.*, Def. Exh. D). Morever, detainees "do not have a constitutionally protected right to a grievance procedure" – much less one that complies with their own personal preferences. *Oladipupo v. Austin*, 104 F. Supp. 2d 626, 638 (W.D. La. 2000)(citations omitted).

Plaintiff also argues that Dauzat was liable for the actions of his subordinates including Fred Schoonover, the security officer who responded to his second step grievance. Yet, "[s]upervisory officials may be held liable only if: (I) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). In other words, to recover against Dale Dauzat in his supervisory capacity, plaintiff must adduce facts establishing that Dauzat was personally involved in the denial of adequate medical care to

plaintiff or that Dauzat implemented an unconstitutional policy that caused plaintiff's injuries. Lijadu has done neither.

Plaintiff's suit against Dale Dauzat in his official capacity is similarly deficient. A suit against an officer in his official capacity is treated as a claim against the governmental entity for which he is employed. *See, Brooks v. George County, MS*, 84 F.3d 157, 165 (5th Cir. 1996). Dauzat is apparently employed by the Tensas Parish Sheriff. To impose liability against the Sheriff via his official capacity claim against Dauzat, plaintiff must demonstrate *inter alia* a policy or custom which caused the alleged constitutional deprivation. *Brooks, supra* (citing *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690-691, 98 S.Ct. 2018, 2036 (1978)). "In a Section 1983 case, the burden of proving the existence of an unconstitutional municipal policy or established custom rests upon the plaintiff." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). Plaintiff has not met his burden.

For the foregoing reasons, the undersigned finds that there is no genuine issue as to any material fact and that defendant, Dale Dauzat is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Accordingly,

**IT IS RECOMMENDED** that defendant, Dale Dauzat's motion for summary judgment [doc. # 25] be **GRANTED**, and that plaintiff's claims against said defendant be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that plaintiff's cross-motion for summary judgment [doc. # 30] be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written

objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 21st day of February, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE