UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| ENITAN AYODEJI LIJADU | * | CIVIL ACTION NO. 06-0518<br>Section P |
| VERSUS | * | JUDGE JAMES |
| IMMIGRATION AND<br>NATURALIZATION SERVICE, ET<br>AL. | * | MAGISTRATE JUDGE HAYES |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge is a Motion to Dismiss or in the Alternative, Motion for Summary Judgment filed by defendants, John Mata and Timothy Pelamati (incorrectly named in the complaint as Agent Palamante). [doc. # 56]. The motion has been referred to the undersigned for decision pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons stated below, it is recommended that the hybrid motion be **GRANTED**.

### Procedural History

On August 17, 2004, Enitan Lijadu was taken into custody by Immigration & Customs Enforcement ("ICE"). On December 5, 2004, he was transferred to the Tensas Parish Detention Center ("TPDC") in Waterproof, Louisiana where he remained as an immigration detainee until shortly before his December 12, 2006 removal from the United States.

On March 27, 2006, Lijadu filed the above-captioned civil rights complaint.[1] Made

---

[1] The complaint arises under 42 U.S.C. § 1983 insofar as it alleges constitutional violations by "state actors." It also arises under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999 (1971) insofar as it alleges constitutional violations by federal employees.

defendants were ICE District Director, John Mata; ICE Deportation Officer, Timothy Pelamati (incorrectly named Agent Palamante); TPDC Warden, Dale Dauzat; and TPDC Medical Administrator, Pam Poole.[2]  Lijadu seeks injunctive relief and compensatory damages due to inadequate medical care and an unsafe condition at TPDC which caused him to slip and fall and break his wrist.

On July 18, 2006, the court directed service upon defendants.  Dale Dauzat was the only defendant initially served, and he was ultimately dismissed on summary judgment.  (*See*, March 15, 2007, Judgment).  On May 25, 2007, defendants, Mata and Pelamati, filed the instant motion to dismiss the claims against Mata for lack of personal jurisdiction and/or to dismiss the claims against both defendants for failure to state a claim or via summary judgment.  Fed.R.Civ.P. 12(b)(2), 12(b)(6), and 56.  Following a delay for briefing, the matter is now before the court.[3]

## Analysis

The courts are obliged to consider personal jurisdiction before reaching the merits of a claim.  *See*, *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 623 (5th Cir. 1999) (citing *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994)).  Accordingly, the court will first address the motion to dismiss for lack of personal jurisdiction.

1) Personal Jurisdiction

"In a federal question action arising under a statute that is silent regarding service of

---

[2]  The now defunct Immigration and Naturalization Service was identified as a defendant in the caption of the complaint.  However, no allegations were levied against the former government agency in the body of the complaint, as amended.  It has since been stricken as a defendant.  (March 27, 2007, Order).

[3]  Plaintiff now resides in Nigeria and experiences some delay with the trans-Atlantic postal service.  (*See*, doc. # 59).

process, as is the case with [42 U.S.C. § 1983],[4] a court may exercise personal jurisdiction over a nonresident defendant if (1) the defendant is amenable to process under the Long-arm Statute of the forum state; and (2) the exercise of jurisdiction by the forum state comports with due process." *Johnson v. Tuff N Rumble Management, Inc.*, 1999 WL 1201891 (E.D. La. 12/15/1999) (citation omitted). Louisiana's long-arm statute extends jurisdiction to the full limits of the Constitution. *See*, La. R. S. § 13:3201(B). Accordingly, the sole issue here is whether exercising *in personam* jurisdiction over John Mata comports with federal due process.

When the court resolves a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, plaintiff need only make a *prima facie* showing of the jurisdictional facts. *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266 (5th Cir. 2006).

For personal jurisdiction to satisfy due process requirements, the plaintiff must establish that "(1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Moncrief Oil Intern., Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 3/12/07) (citations omitted).

The "minimum contacts" prong divides contacts into those that give rise to general jurisdiction and those that give rise to specific jurisdiction. *Freudensprung, supra*. General

---

[4] *See, Burstein v. State Bar of California*, 693 F.2d 511, 514 (5th Cir. 1982).

jurisdiction may be exercised when a defendant's contacts with the forum state are "continuous and systematic," regardless of whether the action is related to the forum contacts. *Seiferth*, 472 F.3d at 270 (citations omitted). Specific jurisdiction applies where the non-resident defendant has relatively few contacts with the forum state, but the suit arises out of or is related to the defendant's contacts with the forum. *Id*. (citations omitted).

"A court may exercise specific jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendants [sic] contacts with the forum state." *Freudensprung, supra* (citations omitted).

John Mata is employed by the Department of Homeland Security, U.S. Immigration and Customs Enforcement, Office of Detention and Removal Operations ("DRO"). (Declaration of John Mata; Gov't Exh. 1). From December 2004 through November 2006, he served as DRO Field Office Director in Atlanta, Georgia. *Id*. The area of responsibility for the Atlanta field office includes Georgia, South Carolina, and North Carolina. *Id*. Mata is currently assigned to the DRO field office in San Antonio, Texas. *Id*.

In his Statement of Issues ostensibly submitted in response to defendants' motion to dismiss, plaintiff did not discuss Mata's contacts with the forum state.[5] In fact, plaintiff's sole allegation against Mata is that he failed to respond to a January 27, 2006, letter, sent to him by

---

[5] Plaintiff discussed the applicability of federal diversity jurisdiction. 28 U.S.C. § 1332. However, the court's subject matter jurisdiction, which is conveyed via federal question, is not at issue.
  Plaintiff also seems to argue that his deportation has prevented him from receiving treatment for his illnesses at the VA hospital. However, the propriety of his removal is not at issue in this § 1983 action challenging the adequacy of his medical care while confined at the TPDC.

plaintiff, wherein plaintiff complained about the inadequate medical care that he was receiving at the TPDC. (*See*, Pl. Amend. Compl.; Compl., Exh. D). Yet, simply receiving a grievance from a detainee housed in the forum state does not subject a defendant to personal jurisdiction in that state. *See Cuoco v. Hurley*, 2000 WL 1375273 (D. Colo. 9/22/00) (court lacks personal jurisdiction over defendants who sign reviews of inmates' appeals outside of state and who occasionally advise senior staff of prison within state); *Johnson v. Rardin*, 952 F.2d 1401, 1992 WL 9019 (10th Cir. 1/17/92) (unpubl.) (same). Moreover, Mata's geographical area of responsibility did not extend to Louisiana, and there is no evidence that he was involved in the decision to transfer plaintiff to the TPDC. *Contrast, Abner v. Secretary of Dept. of Homeland Security*, 2006 WL 1699607 (D. Conn. 2006) (court exercised personal jurisdiction over field office director because his geographical territory included the forum state).

Mata's only direct contact with Louisiana appears to be a January 26, 2005, visit to familiarize himself with the TPDC. (Declaration of John Mata; Gov't Exh. 1).[6] However, Mata stayed only a few hours, and there is no evidence that the purpose of his visit was to oversee the operations there. *Id*. He also did not have any contact with plaintiff while at the TPDC. *Id*. In other words, there is no indication that the January 26, 2005, visit was related to the instant action. One or more visits to the forum state do not constitute continuous and systematic contacts sufficient to confer personal jurisdiction. *See, Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 373 (5th Cir. 1987).[7] Accordingly, the court may not exercise personal jurisdiction over

---

[6] Mata has never owned any property in Louisiana and has not conducted any business here. (Declaration of John Mata; Gov't Exh. 1).

[7] Having determined that no minimum contacts exist to exercise jurisdiction over Mata, the court need not consider whether such jurisdiction would violate traditional notions of fair

Mata in Louisiana.⁸

2) Motion to Dismiss/Summary Judgment

In support of their motion to dismiss for failure to state a claim upon which relief may be granted, defendants submitted evidence outside of the pleadings. Accordingly, the motion is treated as a motion for summary judgment. Fed.R.Civ.P. 12(b), 56.

Summary judgment is appropriate when the evidence before the Court shows that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. F.R.C.P. Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" under this standard if the non-moving party has presented sufficient evidence such that a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden in summary judgment and must demonstrate through portions of the pleadings, depositions, answers to interrogatories, admissions and/or affidavits that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has successfully demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show the opposite. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In doing so, the non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, the movant

---

play and substantial justice. *Moncrief Oil Intern., Inc.*, *supra*.

⁸ Rather than dismiss a defendant for lack of personal jurisdiction, the court shall, in the interest of justice, transfer the case to another district where the action may have been brought. *See*, 28 U.S.C. § 1631. In this case, however, a transfer would be futile and not in the interest of justice because Mata is subject to dismissal on the merits for the same reasons as his co-defendant. *See*, discussion, *infra*.

"must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Furthermore, these specific facts must be shown through something more than "some metaphysical doubt as to the material facts, by conclusory unsubstantiated allegations, or by a mere scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

      Plaintiff suffers from ulcerative colitis and HIV. He contends that while at the TPDC the treatment and monitoring of his medical conditions were unreasonably delayed. Specifically, Lijadu alleges that for over eight months he did not receive his ulcerative colitis medication (Asacol). As a result, he suffered diarrhea, weight loss, vomiting, and fatigue.[9] Plaintiff further alleges that in May 2005, he complained about broken dentures and associated eating difficulty. Yet, his broken dentures were never fixed or replaced.[10]

      Lijadu adduced evidence that he notified his deportation officer, Timothy Pelamati, both in person and via letter, about the TPDC's indifference to his medical condition. (Declaration of Enitan Lijadu, Pl. Exh. 2; and 12/14/05 letter to Timothy Pelamati, Pl. Exh. 2B). He states, however, that he never received any response from Pelamati. (Declaration of Enitan Lijadu, Pl. Exh. 2). Consequently, plaintiff seeks to hold Timothy Pelamati responsible in his individual,

---

    [9] In July 2006 when Lijadu's supply of Asacol again ran out, almost one month elapsed before his medication was resumed.

    [10] Also, on September 5, 2005, Lijadu injured his wrist after slipping and falling in a puddle of water in the prison bathroom. Two days after the accident, his wrist was still swollen, and he was taken to the hospital where x-rays confirmed a fracture. His wrist was placed in a splint, and he was instructed to see an orthopedist within two to three days. However, the medical records indicate that he was not seen by an orthopedist until almost six weeks later on October 20, 2005. Lijadu claims that the delay in being seen by an orthopedist slowed the healing process, and may account for permanent deformity to his wrist and persistent numbing pain.

official, and supervisory capacities for failing to intervene to ensure that he received adequate medical care.

The United States, as sovereign, is immune from suit except in the manner and degree sovereign immunity is waived. *U.S. v. Testan*, 424 U.S. 392, 96 S.Ct. 948 (1976). In the absence of a waiver of immunity, plaintiff cannot seek damages against the United States, one of its agencies, or a federal employee *acting in his official capacity* for the alleged deprivation of a constitutional right. *See, FDIC v. Meyer*, 510 U.S. 471, 484-87, 114 S.Ct. 996, (1994); *Gibson v. Federal Bureau of Prisons*, 121 Fed. Appx. 549, 551, 2004 WL 3019779 (5th Cir. 12/30/2004) (citing *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 71-72, 122 S.Ct. 515 (2001); and *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358 (1991)). Plaintiff has not cited any authority (and the court is not aware of any) to support a finding that the United States has waived its sovereign immunity for the type of claim and damages sought here.

Plaintiff contends that, as his deportation officer and primary point of contact, Timothy Pelamati was personally responsible for his well-being at the TPDC. However, Pelamati was not personally involved in any aspect of Lijadu's medical care while at the TPDC. (*See*, Declaration of Timothy J. Pelamati). Furthermore, Pelamati does not recall receiving any medical care complaints from Lijadu, but if he had, he would have followed DRO policy and forwarded the complaints to his supervisor. *Id*.[11]

In essence, plaintiff seeks to impose liability upon Pelamati for his alleged failure to adequately supervise plaintiff's conditions of confinement at the TPDC. However, to be liable in

---

[11] In fact, plaintiff argues that Pelamati should have forwarded his complaints to his supervisor. (Pl. Statement of Issues, No. 68). The uncontroverted evidence establishes that Pelamati did so.

a *Bivens* action, supervisory officials must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998).[12]  Again, there is no evidence that Pelamati was personally involved in depriving plaintiff adequate medical care.  Moreover, there is no evidence that Pelamati personally enacted any policy that potentially caused plaintiff's injuries.  Absent either of the foregoing circumstances, a deportation officer is not responsible for an immigration detainee's medical care or well-being. *See, Okwilagwe v. Dallas County Jail Nurse Station*, 2001 WL 1577435 (N.D. Tex. 12/06/01) (citing *Oladipupo v. Austin*, 104 F. Supp.2d 623, 626 & n. 2 (W.D. La.2000), *aff'd sub. nom*, *Foster v. Townsley*, 243 F.3d 210 (5th Cir.2001)).[13]

For the foregoing reasons, the undersigned finds that there is no genuine issue as to any material fact and that defendant, Timothy J. Pelamati is entitled to judgment as a matter of law. Fed.R.Civ.P. 56.  Accordingly,

**IT IS RECOMMENDED** that defendant, John Mata's motion to dismiss for lack of personal jurisdiction [doc. # 56] be **GRANTED**, and that plaintiff's claims against said defendant be **DISMISSED**, **without prejudice**.  Fed.R.Civ.P. 12(b)(2).

**IT IS FURTHER RECOMMENDED** that defendant, Timothy J. Pelamati's (incorrectly

---

[12] "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

[13] The TPDC was the primary caretaker of plaintiff's health while he was housed at the facility. (Declaration of John A. Mata).  Also, the Division of Immigration Health Service, a bureau of the Department of Health and Human Services, oversees health care services for immigration detainees in federal, state, and local jails pursuant to a managed care/utilization management system. *Bennett v. Division of Immigration Health Services,* 2006 WL 845864 E.D. Pa. 3/28/06).

named Agent Palamante) motion for summary judgment [doc. # 56] be **GRANTED**, and that plaintiff's claims against said defendant be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 17th day of July, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE